## S95A2040. CLATER v. THE STATE.

(467 SE2d 537)

SEARS, Justice.

Appellant Tommy L. Clater urges us to adopt a theory that would permit "substantial compliance" with the provisions of Article III (b) of the Interstate Agreement on Detainer concerning the procedural requirements for written notice of a request for final disposition by a prisoner against whom a detainer has been lodged. Because we find that those notice requirements, as set forth in Article III (b) and as applied in the case law, must be strictly complied with, we reject Clater's argument. Moreover, because we find that Clater's request for final disposition of the indictment against him was insufficient as a matter of law, we affirm the order of the trial court denying Clater's motion to dismiss for want of prosecution.

In July 1994, Clater was indicted in Fulton County Superior Court for murder, felony murder, and aggravated assault. Shortly thereafter, Clater was arrested in Texas, where he was wanted for parole violation, in addition to outstanding federal charges. On December 8, 1994, the Fulton County District Attorney lodged a detainer against Clater in order to bring him to Georgia for trial on the charges set forth in the indictment. Texas authorities informed Clater that the detainer had been lodged against him, and that he was entitled under Article III of the Interstate Agreement on Detainer ("IAD") to file a request for final disposition of the indictment. That same day, Clater completed and signed a request for final disposition that specified the Fulton County Sheriff as the "prosecuting officer" and the "Superior Court" as the appropriate court. On December 27, 1994, a letter was issued by the Texas Department of Criminal Justice to the Office of the Fulton County Sheriff, which stated that a copy of Clater's request for final disposition was enclosed.

In early February 1995, the Assistant Fulton County District Attorney assigned to Clater's prosecution filed a request for custody of Clater pursuant to Article IV of the IAD, and Georgia authorities took custody of Clater on March 2, 1995. In July 1995, after inquiry was made by defense counsel, the request for final disposition and the accompanying letter from Texas authorities were discovered in the Sheriff's Office. There was a facsimile strip across the top of this letter and Clater's request for final disposition, which contained the facsimile number of the indictment section of the Fulton County District Attorney's Office and the date January 15, 1995.

Also in July 1995, Clater filed a motion to dismiss the indictment against him for want of prosecution, contending, among other things, that the District Attorney's Office had received notice no later than January 15, 1995 of Clater's request for final disposition, and that it had failed to bring him to trial within 180 days of that date, as re-

quired under Article III (a) of the IAD. The trial court denied the motion, ruling that Clater had failed as a matter of law to comply with the notice requirements set forth in Article III (b) of the IAD.

1. Article III (a) of the IAD, codified at OCGA § 42-6-20, provides that whenever a prisoner in a state that is a party to the IAD has pending against him an untried indictment from another party state, and a detainer has been lodged against the prisoner on the basis of such indictment, the prisoner "shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment[ ]."

Article III (b) states that:

> The written notice and request for final disposition referred to in paragraph (a) hereof *shall* be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who *shall* promptly forward it together with the certificate *to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.*

(Emphasis supplied.)

2. The IAD is an interstate compact intended, among other things, to provide procedures for the orderly disposition of outstanding charges against prisoners incarcerated in out-of-state facilities and detainers based upon such charges.[1] Paramount among these procedures, Article III prescribes the method for the provision of notice of a request for the disposition of charges which serve as the basis for a detainer. We agree with the trial court that the notice procedures of the IAD were intended in part to prevent the very type of situation that we are presented with in this appeal.

3. According to the clear wording of Article III (a), the right of a prisoner to be tried within 180 days accrues only after the precise operational procedures set forth in the IAD are completely satisfied.[2] It is incumbent upon the prisoner to initiate these procedures, and the Court of Appeals has previously indicated that the notice provi-

---

[1] See OCGA § 42-6-20 (Art. I).

[2] See *Fex v. Michigan*, 507 U. S. ___ (113 SC 1085, 1090, 122 LE2d 406) (1993) (ruling that the 180 days set forth in Article III (a) runs from the date that the notice actually is received by the appropriate court and prosecuting officer, and not from the date that the notice is delivered by the prisoner to the custodial officer who is to forward such notice; the court noted that this could cause unfair results where the custodial officer fails properly to forward the notice, but deemed this to be a matter "more appropriately addressed to the legislatures of the contracting states." Id.).

sions of Article III (b) must be strictly complied with.[3]

In this case, there is no dispute that the notice requirements of Article III (b) were not satisfied. The facsimile transmission of the request for final disposition did not satisfy the requirement in Article III (b) that the request *shall* be sent by registered or certified mail, return receipt requested. Clater urges us to rule that notice by facsimile to the office of the District Attorney constitutes substantial compliance with the notice requirements of Article III (b), and that his notice therefore triggered the 180-day rule. This we decline to do. We agree with the trial court that under the IAD, a facsimile transmission is not the equivalent of registered or certified mail. In this regard, we find that, even assuming arguendo that Clater's notice was received by the District Attorney's Office, it cannot be determined *who* in that office received the notice. Thus, it is impossible to say that notice was served upon the "appropriate prosecuting officer," as required under Article III.[4] Furthermore, the plain language of Article III (b) simply does not support Clater's argument, as it requires that notice *"shall"* be served on the prosecuting officer and court "by registered or certified mail, return receipt requested." Nowhere does Article III (b) suggest that alternative forms of service will be deemed acceptable. Accordingly, we find that Clater's IAD request was improper due to the failure to comply with Article III.

We also note that the United States Supreme Court has recently stated that in considering the IAD,

> most significant is the provision of Article III (b) requiring the warden to forward the prisoner's request and accompanying documents "by registered or certified mail, return receipt requested." The IAD thus provides for documentary evidence of the date on which the request is delivered to the officials of the receiving state.[5]

As a matter of law, the State is not required to bring a prisoner to trial within 180 days of an incomplete or improper IAD request.[6] Accordingly, the trial court was correct in denying Clater's motion to dismiss for want of prosecution.

---

[3] *Johnson v. State,* 154 Ga. App. 512, 513 (268 SE2d 782) (1980).

[4] Moreover, we note that if Article III (b) had been complied with, it would be possible to ascertain to whom the notice was delivered.

[5] See *Fex,* 113 SC at 1090. We also note that our ruling is consistent with that of other States requiring that the notice provisions of Article III be strictly complied with. See, e.g., *State v. Thomas,* 275 NW2d 211 (Iowa 1979); *Ekis v. Darr,* 539 P2d 16 (Kan. 1975); *People v. Daily,* 360 NE2d 1131 (Ill. App. 1977).

[6] *Thompson v. State,* 186 Ga. App. 379 (367 SE2d 247) (1988); *Greathouse v. State,* 156 Ga. App. 491 (274 SE2d 835) (1980).

4. The trial court did not abuse its discretion in denying Clater's motion to sequester the State's witnesses, all of whom were members of the District Attorney's Office, and thus officers of the court.[7]

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 4, 1996 —
RECONSIDERATION DENIED MARCH 28, 1996.

*Theodore Johnson,* for appellant.

*Lewis R. Slaton, District Attorney, Leonora Grant, Phyllis M. Burgess, Assistant District Attorneys,* for appellee.

