**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 2, 2015**

# In the Court of Appeals of Georgia

A15A0794. CHAMBLEE v. THE STATE.

RAY, Judge.

Following a jury trial, William Horace Chamblee was convicted of two counts of child molestation (OCGA § 16-6-4 (a) (1)).[1] He appeals from the denial of his motion for new trial and amended motion for new trial as to one count of child molestation (Count 3), contending that the evidence was insufficient to sustain his conviction. For the following reasons, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that Chamblee, a

---

[1] As the jury could not reach a verdict on a count of aggravated child molestation (OCGA § 16-6-4 (c)), the trial court declared a mistrial as to that count.

friend of the victim's grandmother, lived in the basement of the victim's home. The victim, M. C., lived in the residence with her mother, father, grandmother, and sister.

On October 23, 2011, M. C.'s father went to the basement of the house to get something to eat. M. C., who was six years old at the time, ran out of Chamblee's room saying, "Daddy, Daddy." M. C.'s father testified that M. C. had a "sneaky look, like she was into something."

M. C.'s father took her to a restaurant for something to eat. While there, M. C. told her father that Chamblee had shown her "sexing shows" on his computer on three to five separate occasions. M. C. said that in the sexing shows, a "girl licked a boy and [a] boy licked a girl." Moreover, M. C. also said that Chamblee had touched her and licked her vagina. M. C.'s father then called the police.

Shortly after, the police arrived at M. C.'s house, and Chamblee agreed to let officers take his computer and external hard drive for forensic testing. When he gave one of the officers his computer and external hard drive, Chamblee stated that there were no pornographic movies on his computer. At trial, he admitted that he "bald-facedly . . . lied" about this because he was afraid that if he admitted to having the pornography on his computer, the police would think that he molested M. C.

2

M. C. was sent to the Gwinnett Sexual Assault Center and interviewed by a sexual assault nurse examiner. M. C. told the nurse that Chamblee had "shown her videos of boys and girls sexing on the computer" and that the videos depicted "boys kissing girls' mui-muis and girls kissing boys' mui-muis."[2] However, after an evaluation, the nurse found no trauma to M. C.'s vagina or anus.

Detective Nick Levato, a computer forensics examiner with the Gwinnett County Police Department, testified that he had located pornographic videos within two existing folders on Chamblee's computer. The detective took still shots of the video.[3] In addition, police determined that the video was last viewed or accessed on October 23, 2011, the same date that M. C. made outcry to her father.

---

[2] In M. C.'s interviews with the nurse and with Detective Gerald Leak, she indicated that the word "mui-mui" was how she referred to female and male genitalia.

[3] The parties stipulated that M. C. had identified two of the State's screen shot exhibits as images she saw on the video on Chamblee's computer.

Also on October 23, 2011, Detective Leak interviewed M. C.[4] M. C. told Detective Leak that Chamblee had shown her the sexing movies that day. She described the video as a boy and girl kissing each others' "mui-muis" on a bed in jail while wearing orange and black tiger suits.[5] M. C. also told the officer that the video showed the boy putting two fingers or two hands inside the girl's "hole."[6] Detective Leak testified that when he watched the movie found on Chamblee's computer, he saw a male and female inside a cage, dressed in orange and black tiger suits performing oral sex on each other, as M. C. had described.

Chamblee testified at trial, essentially denying that he showed M. C. the video. He testified that on the day of the incident, he was deleting files off his computer and had played the video one last time. As the movie played, Chamblee left his room and

---

[4] The parties also stipulated "that due to [M. C.'s] young age and the desire of all parties not to have to subject her to the rigors of trial, her prior recorded statements to Detective Leak [would] be admitted into evidence in place of her live testimony." The videotape of M. C's interview with Detective Leak was played for the jury, but its contents were not transcribed. However, we have reviewed the video in its entirety for the purposes of this appeal.

[5] M. C. indicated that Chamblee had shown her "sexing" shows "maybe three times" prior to October 23, 2011.

[6] For several minutes, M. C. used unclothed male and female dolls to demonstrate what she had seen in the video, showing Detective Leak the actions and positions of the participants depicted in the video.

4

went to the bathroom, at which time M. C. came into his room and watched the video without his permission.[7]

A jury convicted Chamblee of two counts of child molestation. Chamblee contends that the evidence was insufficient to sustain the verdict as to Count 3 for child molestation. We disagree.

> When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt.

(Citation and punctuation omitted.) *O'Rourke v. State*, 327 Ga. App. 628, 630 (1) (760 SE2d 636) (2014).

OCGA § 16-6-4 (a) (1) provides that "[a] person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" Count 3 of the

---

[7] Chamblee's basement room has no door, and its interior is visible to someone coming down the stairs.

indictment charged Chamblee with child molestation for unlawfully showing M. C. "a video depicting a female placing her mouth upon the penis of a male, with intent to arouse and satisfy [Chamblee's] sexual desires[.]"

Chamblee contends that he did not have actual or constructive possession of the videos because he was in the bathroom when M. C. wandered into his bedroom and watched the video. He argues that because he was not in possession of his computer, he did not show M. C. the videos. Citing OCGA § 24-14-6,[8] Chamblee asserts that there is only circumstantial evidence that he showed M. C. the video and, thus, the facts did not exclude the reasonable hypothesis that M. C. had seen the video without his involvement.

While determining whether evidence is direct or circumstantial may at times be a confusing task, it is not so in the instant case. If "an eyewitness testified that [s]he saw the defendant commit the crime[,] [t]here can be no doubt that such testimony is direct evidence because it immediately points to the question at issue – whether the defendant committed the crime." (Citations omitted.) *Stubbs v. State*, 265

---

[8] OCGA § 24-14-6 provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

Ga. 883, 884-885 (2) (463 SE2d 686) (1995). Further, "in incidents of child molestation, more often than not the child/victim *is* the only witness able to provide such direct evidence." (Emphasis in original.) *Cantrell v. State*, 231 Ga. App. 629, 629 (500 SE2d 386) (1998).

Here, the issue in Count 3 is whether Chamblee showed M. C. a video depicting pornographic material. In M. C.'s stipulated interview that was introduced to the jury at trial, she testified that Chamblee had showed her "sexing shows" the day of the incident and on several other occasions. In addition, M. C. went into particular detail of what the participants in the videos wore and their location when they engaged in the sexual activities, and she used dolls to explain and demonstrate the sexual actions in which the participants engaged, which included a description of oral sex as charged in the indictment. Further, M. C.'s interview testimony was consistent with the testimony of M. C.'s father, the nurse, and Detective Leak. As a result, Chamblee's "reliance upon the reasonable hypothesis rule, set forth in [OCGA § 24-14-6], is misplaced, as this rule applies only when the evidence is entirely circumstantial. Because the victim's testimony provided direct evidence of [Chamblee's] guilt, the reasonable hypothesis rule is not at issue here." (Citations, punctuation, and emphasis omitted.) *Ottley v. State*, 325 Ga. App. 15, 18 (1) (752

SE2d 92) (2013). See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Carter v. State*, 320 Ga. App. 454, 455 (1) (740 SE2d 195) (2013) ("[T]he victim's testimony alone is generally sufficient to establish the elements of child molestation") (citations and punctuation omitted).

It was up to the jury to determine witness credibility and resolve evidentiary conflicts in deciding whether to believe M. C.'s interview testimony that Chamblee had shown her the pornographic video or Chamblee's testimony that he had not shown M. C. the video. *Carter*, supra at 456 (1). "Ultimately, as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Knight v. State*, 311 Ga. App. 367, 368 (1) (715 SE2d 771) (2011). Such competent evidence is present here, and we find no error.

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur*.